Excuse me. Yes, sir. May it please the court. I'm Randy Frederick and I'm one of the attorneys representing the appellant in this case, Ms. Smith. I will be addressing the judicial estoppel argument and Mr. Frederick will be addressing the retaliation argument. The district court's application of judicial estoppel in this case is due to be reversed for at least three reasons. First, the district court applied and heavily relied on the Burns and Berger cases, which this court overruled on Bonk and Slater. Second, the district court improperly ignored or disregarded Smith's declaration in opposition to summary judgment, which this court in United States v. Stein said a district court cannot do. Third, the district court failed to resolve reasonable inferences in favor of Ms. Smith. The en banc court in Slater stated that a court should the facts and circumstances of the particular case. So let me ask you this, just as a factual matter here, even though the decision comes before Slater, is there really any material inconsistency with Slater? I mean, it looks to me as you read the record that he is referring to kind of facts and circumstances. He's talking about motive and whether, you know, it was designed to make a mockery of the judicial system. And, you know, we've got a post Slater case, Weekly v. Eagle Logistics, which sort of sets up like this one decision before Slater, then comes Slater. But we look at it and we say we don't need a remand for a Slater determination because it looks to us that this is kind of good enough that it meets Slater substantively. The facts in the Weekly case were far more egregious. And with all due respect, sir, in this case, the facts are not disputed except as to the original allegation and the original complaint. And what is agreed upon by all parties is that that allegation was mistaken. The defendants denied it in their answer. They submitted documents and evidence that contradicted that allegation in their motion for summary judgment. Smith's own declaration contradicts that allegation in the original complaint. But doesn't the district court, I mean, the district court says what I'm concerned about here is the entire sequence of You know, your client says this in the complaint, then they answer. And then there's this absolute about face. And the district court says, looking at all of that stuff, I would call it facts and circumstances. Looks like there's a motive. Looks like this was intentional. I understand that, Your Honor. But what this court said in Slater was judicial estoppel should not be applied when inconsistent positions were the result of inadvertence or mistake. Right. And I guess what I'm saying is that it seems to me as a factual matter, the district court has said like this wasn't inadvertence or mistake. Slater certainly says the inconsistency alone ain't enough. Got to be more. And it seems like the district court here, even though acting before Slater, sort of anticipated Slater and said, I'm not resting on the inconsistency. I'm sorry. Go ahead. Well, judges, all the facts in this case indicate, and I see my time is out, all the facts in this case indicate that Ms. Smith did not know at the time she was employed and during the pendency of her bankruptcy case that she had a claim at all. If she did not know, there was no failure to disclose and there was no misleading the court and judicial estoppel wouldn't apply to begin with. I'm sorry. My time is up. May it please the court, thank you for this opportunity today. The opinion blow in this area of retaliation law is an anomaly that should not stand. It's contrary to the United States Supreme Court case, Bill Johnson Restaurant, a seminal case in this whole area of the law, in which the Supreme Court said, and I quote, there is, quote, no doubt, no doubt, the employer may use the instrument of the lawsuit as a powerful instrument of a coercion or retaliation. This opinion blow is contrary to that principle, which applies equally to counterclaims. The court's decision blow is contrary to this court's decision, NLRB versus United States Postal Service, on which Judge Joe Fuchs, who you said on the panel, it is that decision, where this court found that, held that an unlawful threat of retaliation is not, does not have First Amendment protection. And the court blow, he felt the threat here was worthy of First Amendment protection because it's stated by one law to another law. There's nothing in law that gives an attorney a pass and make a threat on behalf of the employer. A threat the employer cannot itself make should not be allowed by the employer's attorney. But to succeed, do you have to show that the threats are empty, that there's nothing to these claims? I mean, surely there's protection in negotiating a lawsuit about, like, I've got some real live honest to goodness claims I'm going to bring. I don't think you get to unless the claim is filed. Then you get to whether it has some foundation in fact or law. So even, so you've got to, you can't negotiate pre-filing even if you've got a winner? A lock, solid, cinch winner? There was no negation here, Judge. So you can't make an ultimatum about a winner? I mean, are we not looking through the merits a little bit to see whether these claims are any good? If you do, there's no good. For example, the Haines testified, we have no intentions to sue her. But nonetheless, the attorney said, if you don't dismiss your case, there will be counterclaims. And that is, that's a threat. This court's decision is anonymous because it's the only case in the country that does not recognize such language as a threat. The only one I've found, I've read hundreds of them. I said that's contrary to the Supreme Court case statement in Bill Johnson's restaurant, and it's contrary to this court's decision, NLRB versus the United States Postal Service, in which this court held an unlawful threat and has no first amendment protection. So I guess the question I'm trying to get at is, and you said a second ago, and if you do, if you do look through to the merits, these are terrible, and so they're empty threats. But does NLRB get you all the way to the point of saying, like, no matter how strong the counterclaim is, you can't tell your adversary, I intend to file the counterclaim? The NLRB case goes where it has first amendment protection on which the court's decision below to realize. So the answer to the question is, no, I do not think NLRB addresses that point. So do you think to prevail on this argument, you've got to knock down the claims, the would-be counterclaims on the merits to say there was nothing to this one, nothing to that one? For the plan to prevail here, all you have to prove the threat was retaliatory. Okay. And how do you do that? Two ways to look at it, or search the evidence. Joe Flatt laid out in the Bell versus Berman Lennon service case a long time ago about what evidence is. It's evidence, excuse my speech impedances, post-stroke and I plowed through it. No, you're fine, we got it. Judge Joe Flatt said in that case for the court, direct evidence is evidence that proves a point without inference. And so cannot be mishead to mean anything other than the unlawful activity motive of retaliation here. Here, it's a retaliatory on the face. If you don't dismiss this case, which is protected conduct, the case, we will file counterclaims. We're going to sue you. In other words, the court blow held erroneously, there is no direct evidence. How the court avoided that, did not see that, it did not explain, and it's just some area to say that there's no direct evidence here. The same is true of Russ Parker's suspension from Neil Alabama chapter. The letter by which we suspended, because you have sued one of our members, the protected conduct, your membership in this chapter is suspended throughout the duration of the lawsuit. That's why I'm in this case. When I saw that, I thought, as I got older, I started thinking about our profession more. That's bad for our profession. When you tackle the attorney personally or professionally here, based on his representation, his client, this way, in this retaliatory fashion, that's just bad for our profession. But is that conduct attributed to anybody in this case? Neil Alabama chapter was loaded with what I call the defendant, the Haines loaded board of directors. The board made that decision according to the letter itself. On the face of it, it said, our board voted to suspend you. That board includes Mr. Greer, who's sitting right here. There's evidence of that. Mr. Greer submitted his own declaration. He was not on the board, but then President Neil Alabama said, in his recollection, Mr. Greer was on the board then. Mr. Saxon himself was on the Alabama board. Kenny Haines was. Elyse Haines was. Do I recall factually, did Elyse recuse from this decision? Hank Scherer testified that he did not discuss it with her. So, yes, in effect. Okay, I got you. Anyone else? Any of the other principals that you just named, were they, what do we know about their involvement in the decision, one way or the other? We know they were on the board. There's evidence they were on the board. They had evidence, the undisputed, in writing, the board voted to suspend Mr. Parker. They take the position that that was a decision of Hank Scherer himself, but that's not what the letter says. That inconsistency is evidence of pretest in and of itself. Can I ask you this? What about on the retaliation issue? Even if you get beyond the Prima Fascia case, they've said, look, there's a legitimate concern here about exposure to our work product, and so we've got to kind of create a wall of some sort. What's the evidence to rebut that non-retaliatory explanation that shows that that's pretext? He was not admitted as excluded from listserv. He was suspended from membership in the organization entirely. The bylaws of NELA Alabama does not require suspension from listserv. It does not require suspension of membership. The only withdrawal removed from listserv. I can understand that, but that's not what happened. It went much further. On the circumstance of Edmund's side, my time is at root going down. I just want to let the court, I rely on what it reads on that. You say some rebuttal. Thank you. Ms. Leonard? Your honors, may it please the court. My name is Heather Leonard, and along with Charles Guerrero, we represent Haynes & Haynes, Alicia Haynes, and Kenneth Haynes. The two issues before the court are united with a common theme, what evidence is intent? Because both of these issues focus on intent. With judicial estoppel, was there an intent to make a mockery of the judicial process? And with the retaliation claims, are the actions claimed by appellant Jenny Smith the result of a retaliatory motive by Haynes & Haynes, Alicia Haynes, and Kenneth Haynes? With regard to that first issue, in your brief, you described the conduct of Ms. Smith as cold manipulation. Correct. I have tried to understand who was manipulated by anything she did. It was a Chapter 13 bankruptcy with a plan that called for 100% payment of her debt. Your client didn't rely on it because they denied the allegation. The suit was filed later. I just don't understand who was manipulated. And Judge Antion, part of the reason this case is a little different is because it's in a judicial estoppel case with a bankruptcy element. The bankruptcy representations are not the sole reason that we see Judge Proctor in his analysis finds that her claims are estopped. With respect to the bankruptcy issue, he notes that she derives a benefit because she did not accurately reflect her income when she began working for Haynes & Haynes. She didn't report the increased... Who is injured when she does that? Pardon me? Who is injured when she does that? That would have been her creditors. Her creditors. Correct. And who else? And the trustee and the court. Did the court accept and act on her failure to disclose? The bankruptcy court. The bankruptcy court. The first court, if you look at New Hampshire versus Maine, the sine qua non is the reliance by the first court on the representation. Correct, Your Honor. There is no evidence in the record that the first court knew of the misrepresentation because Ms. Smith was discharged from bankruptcy in January... Well, one would be that if the court discharged her on whatever she presented, but I understand she wasn't discharged. You're right, Your Honor. She was dismissed due to all of her creditors were out there to make claims. Correct, Your Honor. And we're not arguing that this is like a Chapter 7 where the creditors would have been defrauded. The distinction between the 13 and 7 that's laid out in the Slater case is very helpful in drawing the distinction. But as this court noted in Slater, still when we're looking into 13, there is a motive on the part of the plaintiff or the nondisclosing party to deceive. And that's where Judge Proctor's opinion really gets into this court's Slater analysis. Who is deceived? With respect to this case, we first have the district court with the about-face representations of Ms. Smith in her initial pleadings. She makes a representation... About-face, she made an allegation in an unsigned pleading. We don't know whether she read it or not. It's signed by her lawyer. And then your client denies the allegation and then the complaint is amended to delete the allegation. Is that right? Those are all facts. How are you prejudiced? How is anybody prejudiced by this? Judicial estoppel, as I understand it, is a principle of equity. And I'm trying to sort out the equities here. And I'm starting out with trying to figure out who's injured. Well, the injury would be to the integrity of the court. Well, it's punishment, really. Correct. You know where I am in this. I don't think Chapter 13 has a thing to do with it versus Chapter 7. I understand, Your Honor. And that's part of why I raised the distinction that this is an estoppel case with a bankruptcy element as opposed to a straight judicial estoppel case based on a failure to disclose with the bankruptcy court. The punishment is to everybody else in the bankruptcy world. And you're punishing the debtor in a civil case before the district court. Your Honor, we in no way are advocating to... If she got punished and it was dismissed, then the next day she went into bankruptcy. Into Chapter 7, what would happen? The assets would become improper. The trustee couldn't do a thing, could he? Correct. And that's where I keep coming back to, we think Slater is a fantastic opinion. We fully embrace that the court should look at all of the circumstances to determine worthy actions of the debtor. Is there any other area of the law with judicial estoppel where the party is punished? No. No, really? The rules allow inconsistent pleadings. Correct. You cross-examine people who make inconsistent statements? I follow you, Your Honor. Any area of the law where somebody who makes inconsistent statements in a prior proceeding, forget bankruptcy, is punished in the district court and their claim is warranted? No, Your Honor. But that being said, the facts of this case are very specific. You have a complaint filed on behalf of a paralegal. Her lawyer signs it under Rule 11. He is empowered to speak on behalf... Well, then go down to the bankruptcy court and have her sanctioned. The bankruptcy judge could send the case to the U.S. attorney. She's no longer in bankruptcy. I understand the court could still do it. And this gets back to, Your Honor, the reason this is significant is because the representations go to the issue of the statute of limitations applicable to the FLSA claim advanced by Ms. Smith. The original complaint contains allegations that would have invoked the three-year statute of limitations to allow her to claim her wage claims for the full period of time that she worked for Haynes & Haynes. You know, those allegations that you're talking about in the initial complaint, evidence, when you read the emails and all of that, she wants a better deal. Really, she wants to renegotiate with her employer. But there's no evidence that there was a claim at that point or that she understood that she had a right to make a claim. Which gets me to one of the problems I have with this case. It was decided as a summary judgment. I think Slater was too. But in Slater, they said it's really not a summary judgment. It's, I guess, more akin to a dismissal. But either, under the first standard, I don't think there are any uncontroverted facts that would support the judgment. And if it's based on the facts of the case, I don't see any findings of fact, nor do I see any evidence other than the emails, which are unpersuasive, that would go to showing motive or deception or any of the things that we're supposed to consider under Slater. Well, Your Honor, I think part of this, it's a two-part answer. First, it goes to Judge Proctor's opinion suggests that where he was finding was that there was an intent to deceive his court as to the plaintiff's knowledge of whether she had claims and put the defendant on knowledge of them to suggest that a willful violation would allow her to invoke the three-year statute of limitations versus the two-year statute of limitations. That's why when he writes in the opinion to say there's an obvious difference in reconciling the specific allegations of the plaintiff's original complaint with the subsequently filed affidavit is an understatement. Plaintiff has taken two diametrically opposed positions on the question of when she became aware of the complaint. But where the second issue goes is footnote 12 within Slater. Because in footnote 12, this court noted that even if the plaintiff's testimony about mistake is uncontroverted, the district court is not obligated to accept that. Judge Proctor engaged in an intensive factual inquiry going through the timeline. It's clear he doesn't use the two-part do not pass go, you didn't disclose it, therefore you immediately have judicial estoppel analysis that we see in Burns and Barger. Instead, he looks at the sequence of events going from when she occurred, discusses the footnote, but footnote 12 is within the original opinion. Wouldn't that contemplate though some other evidence besides just the denial? Well, and that's where Judge Proctor's opinion goes is he says, look, if I look to the conduct that's occurred in my court in front of me relating to these issues, it suggests that this is the plaintiff attempting to manipulate the judicial process based on the exigencies of the circumstances. And hold the party in contempt. There's all kinds of things other than striking claims. Correct, Your Honor. Send them to the bar for an ethics clean house. Well, Your Honor, I don't think Judge Proctor is too far away from doing something of that nature. Your argument is that this is strictly, this rule of law is strictly with regard to a Chapter 13 bankruptcy. If somebody lies in Chapter 13 bankruptcy, the district court will punish them in a civil case involving that bankrupt. That is not our position, Your Honor. And we encourage the district courts to follow Slater and have a fact-intensive analysis. I understand that, but if the bankruptcy court did not rely on the misrepresentation, and if it relied on the misrepresentation, the remedies down there in the bankruptcy court, I realize I'm an outlier on this point. And Your Honor, I think this is a discussion that needs to be had because of the effect the judicial estoppel has on people being able to legitimately pursue the claims. But when we look at Slater 2 and Slater 3, this court says, look, the facts that we, the factors we give you to analyze are an exhaustive list, but we want you to look at all of the facts. And here, under the abuse of discretion standard, we see that is what Judge Proctor did. The court may not like his outcome, but the court did look at all of the facts. He looked at the level of sophistication. I realize that. And if you want to save some time for the other issue? Yes, Your Honor, and thank you for that. When we move on to the retaliation issue, the adverse actions that are challenged here are not the type that evidence retaliatory intent on the part of Haines and Haines, Alicia Haines or Kenneth Haines. When we look to the meeting between John Saxon and Russ Parker, this is the type of meeting that this court urged lawyers to have in the Sayers case before filing certain actions. As members of the bar, we're held to a higher level of civility, and we should be talking about these things. The undisputed evidence is that neither Kenneth Haines, Alicia Haines, nor Haines and Haines as a group told Mr. Saxon to go to this meeting and say anything about counterclaims. They authorized their agent to go to this meeting and discuss the issue of judicial estoppel, which is what he did. Now, he may have taken other actions, and that's one of the reasons this case is kind of odd. On the one hand, on the estoppel But when we get to the retaliation claim, they do an about-face and say that a plaintiff or a party is 100% bound by the actions and intent of their actors. But the difference here is there's no evidence that when Mr. Saxon discusses any type of potential legal claims or theories that could be advanced by the defendants, he's acting on the direction of his clients. So there's no way to of the plaintiff or the defendant. Your Honor, I apologize. I'm used to arguing for employees and plaintiffs and being on the side. It's a little different. Sometimes I may misspeak on that. When we look to the issue of Russ Parker, this gets to what the court was talking about earlier. In that situation, we have a third party who makes a decision because Mr. Parker's presence within the group on the listserv would affect the collegiality and purpose of that. To remove him, the actions by the defendant were solely to report to that group, hey, this lawsuit has been brought against us. You need to remove us from the listserv. At which point, decisions were made. The record is unclear as to whether it was by the board or Mr. Sherrod. His testimony equivocates between the two. And his testimony also equivocates as to who actually was on the board at that time. When you look at his testimony, he says, I think Chuck, Mr. Greer, may have been on the board at that time. Mr. Greer's testimony is that he was not. He says Kenneth Haynes may have been. Mr. Haynes' testimony is he was not. It is undisputed that John Saxon was on the board and Ms. Haynes was on the board. Mr. Sherrod's testimony was that Ms. Haynes was not included in the decision and he couldn't remember whether Mr. Haynes was on the board at the time. But if he was, he would have been excluded from the decision. There's no indication that a retaliatory intent on the part of Haynes and Haynes led to the termination of Mr. Parker's membership in a 33-member collegial group that basically exchanges emails about the status of employment law. The bottom line here is the law of unintended consequences. As we noted, Benjamin Franklin and poor Richard's Almanac, for the want of a nail. When Ms. Haynes reported the litigation to she could comply with the guidelines and that she could be removed from the listserv. This is why Judge Proctor in footnote five does a really good analysis of the distinction between direct evidence and things that may be causally related. And he points out that the things that the appellant is arguing constitute direct evidence are really more the byproduct in the action. It doesn't reflect an retaliatory intent. As my plaintiff's practice is well aware, this sets a high bar because the evidence has to express the retaliatory intent of the actor. And that is simply not present here. Thank you, your honors. Thank you. The district court below at his decision at page seven stated the issue is whether plaintiff knew she had a claim for unpaid overtime against defendants at the time her bankruptcy petition was pending. All the evidence in this case indicates that she did not. Judge Joe Felt in the special concurrence in Slater one stated inconsistent pleadings, however, whether or not under oath are of no concern. Rule eight D of the federal rules permit inconsistent pleadings. And in my view, equity would not countenance a judge made rule to negate that feature of rule eight. What the district court here did is he negated the feature of rule eight. He also negated the feature of rule 15 that permits pleadings, pleading amendments as a matter of right, which is what happened here. What happened here, in effect, in fact, is the original allegation was mistaken. It was wrong. It was denied by defendants. All parties submitted evidence that disputed it and established that that allegation was, in fact, mistaken. Well, it was probably made to show willfulness on the part of the employer, I guess. I did not direct it. I was not representing plaintiff at the time. I don't know why it was made, your honor. I don't. I wish I did. The bottom line is it was incorrect. But what I do think does show willfulness is the fact that these are experienced plaintiff's employment attorneys that she's working for. Let's not forget that. Haynes and Haynes are experienced plaintiff's employment attorneys. And when Ms. Smith did go to them and say she was, she chose to forego overtime, I think that that goes to one of the factors that Slater requires we determine the district court way, which is the sophistication of the plaintiff. It is obvious from her emails. She didn't know that she could not choose to forego overtime. Obviously, if she thought she could choose to forego it, she was not aware she had a claim. And let's not forget that was one month before her employment ended. And I'm, I am out of time. Judge Newsom, I thought about your question further. In one case, I cited my personal brief that addresses your question is so versatile that a manufacturing company's district court case, it says without filing a lawsuit, you don't get to the, whether it be claim is supported or lack of foundation, you only do whether the threat is retaliatory, as this court did in its NRB versus the United States Postal Service. That side of that thing is 34, 39, our personal brief, I believe. Thank you. You know, the fact is, the threat was made by the attorney, not by themselves. Their attorney is the agent of the employer here. This court said in the lines of Verso Quinn, 2018, U.S. App, Lexus 24063, August 23, 2018, at footnote three, employer is, the attorney for the employer is the employer's agent for purpose of the litigation. So, they could not say it to their office manager. They can't say who's their agent. They could not say it to their attorney either. If you do get to whether the, I don't want to add something to my red bullet. I don't want to argue a circumstance that happened in this case. I did not hear that before. Do you, are we going to permit idle, empty threats when they, as you said, as the counsel stated, they didn't work, they had no attention to her. None of that if they're counseled threat to sue my client. We're going to tolerate idle threats to interfere with unfettered access to the courts. That's the purpose of anti-retaliation prohibition to bar unfettered access to the courts. Here, it does not matter to, it matters to this court, it does not matter she was already in court because they were trying to stop her from receding in the court. Since one after the other, where you go to court, where you continue to proceed, there's no difference. But the court thought that, erroneously thought that would have made a difference. I don't know how that court would blame this direct evidence. You know, given they said, admitted here today they had no attention to her, the client himself, that proves they lose their direct evidence case. In the direct evidence case, it was on the employer defendant to demonstrate it would take the same action anyway, regardless of the retaliatory motive, which was presented on its face. Here, they denied they were taking the same action. They said, we had no attention to sue her. That shows that their court's decision blow had been erroneous, not allowed to proceed. We wouldn't win the case. Thank you. And that's the last case. The court will stand adjourned under the usual order.